## Commonwealth v. Beaver Dam Coal Company.

(Decided February 28, 1922.)

### Appeal from Ohio Circuit Court.

Statutes—Special Laws—Section 60 of Constitution.—Chapter 20, 1920 Acts, in providing for the establishment and maintenance of bathrooms in connection with certain industries, when requested by 30% of the employes therein, contravenes the provisions of section 60 of the state Constitution and is therefore void.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, C. E. SMITH and HENSON & TAYLOR for appellant.

J. S. GLENN and ERNEST WOODWARD for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellee was indicted for failing to provide wash rooms for its employes at its mines in Ohio county in accordance with the provisions of chapter 20, 1920 Acts, page 140. A demurrer was sustained to the indictment and same dismissed upon the ground that the act is unconstitutional.

The act is assailed under several sections of the state and federal Constitutions, but having reached the conclusion that it is clearly violative of section 60 of the former, and therefore void, it will be unnecessary for us to consider it from any other viewpoint.

Thus confined, our inquiry involves only the first section of the act, which reads:

"That every owner or operator of a coal mine, steel mill, foundry, machine shop, or any other like business, working thirty (30) persons, or more, in which employes become covered with grease, smoke, dust, grime and perspiration to such an extent that to remain in such condition after leaving their work without washing and cleansing their bodies and changing their clothing, will endan-

ger their health or make their condition offensive to the public, shall provide and maintain a suitable and sanitary wash room, within six months (6) after thirty per cent (30%) or more of said employes decide by a vote of the men affected to ask and notify the employer to erect a wash room at a convenient place in or adjacent to such mine, mill, foundry, shop or other place of employment for the use of such employes. Provided, that where the plants of two or more persons or corporations are situated in such proximity that a joint wash room will serve for the employes of both, then the construction and maintenance of a joint wash room sufficient to accommodate all of said employes shall be considered a compliance with the provisions of this act.''

Assuming, as we feel sure is true, that this much of the act, at least, would be a valid exercise of the police power of the state if the legislature had not made its application dependent upon a vote of the employes rather than its own will, we come directly to the pertinent inquiry under section 60, *supra,* which reads in part:

''No law, except such as relates to the sale, loan or gift of vinous, spirituous or malt liquors, bridges, turnpikes or other public roads, public buildings or improvements, fencing, running at large of stock, matters pertaining to common schools, paupers, and the regulation by counties, cities, towns or other municipalities of their local affairs, shall be enacted to take effect upon the approval of any other authority than the General Assembly, unless otherwise provided in this Constitution.''

It is a familiar general rule that the legislature cannot delegate its powers of legislation; and section 60 of our Constitution in the part quoted simply adopts that rule as applicable to all laws save such as relate to the named subjects, as to which by necessary implication the legislature may enact laws to take effect upon the approval of an authority other than the legislature, as this court has frequently held. These are laws relating to the sale, loan or gift of spirituous, vinous and malt liquors, bridges, turnpikes or other public roads, public buildings or improvements, fencing, roaming at large of stock, matters pertaining to public schools, paupers and the regulation by counties, cities, towns and other municipalities of their local affairs.

It is clear that the establishment of bathrooms in connection with private industries is not within any of these exceptions nor is the power to enact such a law to take

effect upon other than legislative authority expressly or inferentially granted by any other provision of the Constitution.. It is therefore clear that the enactment of this act is prohibited by this section of the Consitution if, as contended by appellee, it is to take.effect, not as a direct and necessary result of legislative action, but rather only upon some other than legislative authority.

It is equally clear, we think, that the act is not vio- lative of this section of the Constitution if, as claimed by the appellant, it derives its effective force direct from the legislature and the acceptance by the employes is merely a prescribed condition upon which whenever existent the act by its own force uniformly operates. This distinction, always determinative of whether the legislature has itself exercised or attempted to delegate to others its legislative power, is often quite difficult to draw, and as a consequence there is much seeming and some real conflict in the authorities. We do not think, however, that this difficulty exists here, but feel that all of the Kentucky cases at least, upon which the appellant relies, are easily distinguishable upon the facts, and in principle support appellee's rather than appellant's contention.

This act, although enacted by the legislature, approved by the Governor, and published with all the formalities of a law, very clearly provides by its unambiguous terms that it shall be of no force or effect whatever, even though all the conditions upon which it could operate may exist, until and unless another tribunal than the legislature shall have decided by vote that its provisions shall become effective, not uniformly throughout the state or any subdivision thereof, but merely in the particular establishment where those empowered to decide the matter happen to be employed at the time.

It surely must be clear that the legislature has not here prescribed the conditions upon which the act will uniformly operate throughout the state or at all, or has attempted to do more than create a means whereby within prescribed limits, a minority of a particular class of employes may or not as they choose, accept or reject the provisions of the act regardless of existing conditions and that, therefore, the legislature has not determined when or whether the act shall become effective, except as it may appear wise or desirable to a minority of the employes to be benefited thereby, and this, too, independently of the action of employes in other like enterprises and without regard to any judgment of the legislature

as to whether or not the act should become effective in any particular mine or factory. The act, therefore, it seems perfectly clear to us, is not only an attempt to delegate legislative power but to delegate this power to be exercised locally and discriminatively even within a particular locality, which is a power the legislature itself does not possess.

To sustain their contention counsel for appellant rely upon numerous Kentucky cases, of which L. H. & St. L. R. Co. v. Lyons, 155 Ky. 396, and Commonwealth v. Goldberg, 167 Ky. 96, are illustrative. In the former the court had under consideration an act regulating the employment of children under sixteen years of age in dangerous employments, to which it was objected that certain provisions contained unauthorized delegations of legislative authority in that they permitted named health officers upon request and investigation, to decide whether or not a particular employment was dangerous or injurious and then permitted the employment of such children therein if the health officer decided that the employment was not dangrous or injurious. The court decided, and we think correctly, that that act did not delegate any legislative authority but simply referred to administrative agents the ascertainment of facts necessary to put into operation the legislative will. The distinction is clear between all such cases and the instant one because in all of them the act expresses the legislative will that the act shall be operative in all cases where certain prescribed conditions exist, whereas here even though all the prescribed conditions upon which the act could operate might exist, it must nevertheless remain inoperative, unless the employes elect to make it operate on the existent facts.

In the latter of the two cases referred to above it was contended that an act which made it unlawful to use or deface registered brands on certain articles was violative of this section of the Constitution upon the ground that it took effect only on the approval of such persons as elected to register their brands, but as the court there said: "When this enactment came from the hands of the legislature it was a complete statute, not depending for its approval or disapproval on any person or set of persons. But like many other statutes it operates on condition and becomes effective only when conditions described in the statute exist."

The clear distinction between all such acts as there considered and this one is that in them the act operates

certainly upon the prescribed conditions, however produced, whereas here all of the conditions upon which the act can operate may exist and yet its operation thereon depends not upon the legislative, but another discretion, which is the very thing prohibited by section 60 of the Constitution except with reference to named subjects. This very distinction has many times been drawn by this court.

In O. & N. R. Co. v. Todd, 91 Ky. 175, involving the constitutionality of an act requiring railroads to build fences along their rights of way, "after notice by the adjoining landowner that the fence must be built," the court, in holding the act invalid, said:

"There is a plain distinction in an act of the legislature requiring a railroad to build its line of fence on a particular part of its way, and in the event of its failure, providing that the owner of the adjacent land may build it at the cost of the corporation, and an act requiring the corporation to build its line of fence at the instance of the owner. In the first instance the police power is being exercised by the legislature and in the last by the owner of the soil."

So here the attempt is made to compel owners and operators of certain businesses to build wash houses as a police regulation of the state, not at the instance of the legislature, but at the instance of the employes. The legislature doesn't care at all about it, but leaves the matter entirely to the employes of each mine or factory falling within a described class.

In Columbia Trust Co. v. Lincoln Institute, 138 Ky. 804, 129 S. W. 113, it was held that the legislature could not, by reason of section 60 of the Constitution, enact a law to become effective in a county, upon the approval of a majority of the voters thereof except on the subjects named in section 60 as exceptions to its inhibitions. Much less then may it enact a law to become effective in a mine or factory upon the approval of a minority of the employes thereof.

In Bryan v. Voss, 143 Ky. 242, 149 S. W. 884, this court held valid an act providing for a commission form of government for cities of the second class but providing that it should not become operative in any such city until approved by a vote of the citizens. The court rested its opinion solely upon the ground that section 60 of the Constitution by necessary implication gave such power to

the legislature with reference to the excepted subjects and that that act dealt with such a subject, the court saying:

"The question turns on the meaning that shall be given the words: 'The regulation by counties, cities, towns and other municipalities of their local affairs' (as used in section 60). It is evident that the General Assembly is given power to pass a law for the regulation by counties, cities, towns or other municipalities of their local affairs, and to allow it to take effect upon its adoption by the people of the municipalities."

Many other cases could be cited to the same effect and no case has been cited nor can we find a single one from this court that can be considered as authority for holding this act to be valid.

Considering, therefore, only cases from this court there can be no doubt that this act is violative of section 60 of our Constitution. Not only so, but such a holding is in harmony with the weight of authority elsewhere. See Lewis' Sutherland Statutory Construction, vol. 1, sections 90-93, and cases cited thereunder.

The chief reliance, however, of counsel for appellant to sustain the act is the fact that the Supreme Court of Indiana (Booth v. State, 100 N. E. 563) and the Supreme Court of the United States (S. C. 237 U. S. 391) have declared constitutional an Indiana act so very similar upon the question now under consideration that it cannot be distinguished from our act, and this, too, under a state constitutional provision essentially the same as the involved part of section 60 of our Constitution, except that it contains none of the exceptions found in the latter.

The fact that the Supreme Court of the United States affirmed the judgment of the state court of last resort adds nothing to the force of the state court's opinion upon the question now being considered, since that court did not consider or discuss that question but simply accepted as final the opinion of the state court thereon, there being no federal question involved therein; but the opinion of the supreme court of another state construing a similar statute under a similar constitutional provision, while not of controlling weight, would be extremely persuasive that we ought to hold this act constitutional, if it were not for our uniform contrary holdings under like circumstances based upon the fact that in providing for certain exceptions to the general prohibition against delegation of authority by the legislature, it is clearly indi-

cated that the words "to take effect upon the approval of any other than the General Assembly," as used in section 60 of our Constitution, were not intended and can not be construed to mean the same thing, as practically the same words found in the somewhat similar Indiana constitutional provision were construed by the supreme court of that state in holding the act constitutional.

The Indiana court does not in the opinion above referred to state its reasons for holding that the act is not violative of the section of the Indiana Constitution corresponding to our section 60, *supra,* but cases cited in support of that holding rest same upon the theory that under their Constitution an act of the legislature when passed, approved and published, *eo instanti,* always becomes effective throughout the entire state and it does not "take effect" by reason of the fact that it must be called into operation if at all by a petition or election. Without questioning the soundness of such a construction of the section of the Indiana Constitution, which reads: "No law shall be passed the taking effect of which shall be made to depend upon any other authority except as provided in this Constitution," but assuming as we must that it is entirely consistent with this and other provisions of that Constitution it is yet without force in the face of the fact that the very section of our Constitution dealing with the same matter clearly indicates that acts of our legislature, though formally enacted and published, which deal with certain named subjects may be made to "take effect" upon other than legislative authority and locally.

We are, therefore, forced to hold that the taking effect "upon the approval of any other authority than the General Assembly" in section 60 of our Constitution means the final approval which is made necessary to vitalize the act, such as a vote or petition of the people to be affected thereby. To hold otherwise would not only be in the face of our every construction of the section, but would render is entirely meaningless.

The fact that the Supreme Court of Illinois also held valid an act quite similar in many of its provisions is also relied upon, but that act contains no provision such as the one we are considering, and we do not hesitate to say that if this act conformed to the Illinois act we would declare it valid.

It is finally argued that in as much as the provision for a submission to the employes as well as the provisions

in section 3 of the act which attempt to exempt certain mines and factories from the provision of the act, were evidently inserted for the protection of the owners and operators from a harsh application of the law and always unless the employes wished to avail themselves of its benefits, they ought not to be allowed to employ these very provisions to invalidate the act. It is quite true that all of the provisions of the act, about which any troublesome complaint is made as to its constitutionality, were evidently inserted for the benefit of the owners and operators and that without these provisions it would be much more burdensome upon them in many instances, but the argument, based upon this fact, leads only to the conclusion that the legislature ought to have omitted, no matter for whose benefit inserted, such provisions as contravene constitutional limitations upon their power, and not that the courts, too, ought to disregard such limitations.

Wherefore the judgment is affirmed.